**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JESSE BRAVO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.1:17-cv-2490 |
| | ) | |
| | ) | |
| FRANCISCAN ALLIANCE, INC, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, JESSE BRAVO, (hereinafter "Plaintiff" or "Bravo") by counsel, upon information and belief complains against FRANCISCAN ALLIANCE, INC (hereinafter "Defendant-Employer") as follows:

**NATURE OF THE ACTION**

1. This is an action to redress Defendant-Employer's discrimination against Plaintiff because of his disability, in violation of the American with Disabilities Act of 1990, 42 U.S.C. Section 12101 et seq. (hereinafter "ADA) to correct unlawful employment practices, and to provide appropriate relief to Bravo, who was adversely affected by such practices. The Plaintiff alleges that his rights under the ADA have been interfered with; was retaliated against in the

exercise of those ADA rights, and was terminated from his employment with the Defendant-Employer.

2.   Bravo is a person with a disability (physical limitations) which limits a major life function (mobility).

3.   Bravo had requested an accommodation to perform his essential job functions.

4.   Defendant-Employer refused engage in the interactive process with Bravo

5.   Defendant-Employer refused the requested accommodations.

6.   Bravo was terminated from his employment under the pretext of poor job performance.

7.   Bravo argues the reason given for his termination was a pretext, but was discharged from employment due to his disability.

## JURISDICTION AND VENUE

8.   Jurisdiction of this Court is invoked under the ADA, 42 U.S.C. §12101 *et seq.*

9.   28. U.S.C. §1331 gives the district court original jurisdiction over civil actions arising under the constitution, laws or treaties of the United States.

10.  28 U.S.C. §1343 (3) and (4) gives the district court jurisdiction over actions to secure civil rights extended by the United States government.

11.  28 U.S.C. §1367 gives the district court supplemental jurisdiction.

**12.**  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

13. All conditions precedent to the filing of this action have been met by Plaintiff in that he has filed a timely complaint with the Equal Employment Opportunity Commission and has file this action within 90 days of receiving a right-to-sue letter from the Commission.

## PARTIES

14. Plaintiff is a citizen of the United States and is a resident of Marion County, Indianapolis, Indiana.

15. At all relevant times, FRANCISCAN ALLIANCE, INC. is Domestic Non-Profit Corporation with its corporate headquarters located at 1515 W. Dragoon Drive, Mishawaka, IN, 46554.

16. Upon information and belief, Defendant-Employer employs more than 15 employees.

## FACTUAL ALLEGATIONS

17. Bravo was hired by Defendant-Employer on or about August 31, 2015 as an 'End User Site Support Level III Technician'.

18. Franciscan is engaged by St. Francis Hospital in Greenwood, Indiana to provide technical support for the hospital's computer and telecommunications systems.

19. In his role as an End User Site Support Level III Technician, Plaintiff was to support Franciscan on information technology issues, including use of computer and telecommunication systems.

20. During Plaintiff's pre-employment interview, Plaintiff had placed Defendant-Employer's Human Resources Department on notice that he was a qualified candidate with a disability.

21. Bravo informed Defendant-Employer by writing down on a copy of his job description what tasks he would require an accommodation in order to perform.

22. Before Plaintiff's employment began, Plaintiff provided a physician's statement to Defendant-Employer's Human Resources Department, dated August 13, 2015, stating that Bravo was a person with a disability.

23. With said knowledge of Plaintiff's physical limitations, and the need for an accommodation, Defendant-Employer hired the Plaintiff.

24. At all relevant times herein, Defendant-Employer knew of Plaintiff's disability.

25. Approximately two weeks after beginning employment, in or about mid-September 2015, Defendant-Employer assigned Bravo a job assignment which Plaintiff had difficulty performing because of his disability.

26. Approximately two weeks after receiving said assignment, Plaintiff met with his immediate supervisor Therisa Schlemmer ("Schlemmer") to discuss complaints Schlemmer received from Plaintiff's co-workers about Plaintiff's inability to physically perform certain job tasks.

27. At this meeting with Schlemmer, Plaintiff again discussed his disability and the need for an accommodation.

28. Plaintiff again requested an accommodation in the form of a 'job restructuring' to eliminate some of the position's physical requirements (i.e., bending, crawling, walking for extended periods, lifting more than 25 pounds).

29. Defendant-Employer refused to engage in an interactive process, and make any accommodations for Plaintiff.

30. Subsequent to the meeting with Schlemmer, the Defendant-employer began to treat the Plaintiff differently than other similarly situated non-disabled employees.

31. On or about December 8, 2016, Plaintiff had made an oral complaint to Defendant-Employer's Human Resources Department regarding Schlemmer's discriminatory conduct.

32. On or about January 16, 2016 Plaintiff filed a formal complaint against Schlemmer complaining of discrimination, retaliation and harassment (hostile work environment).

33. Upon information and belief, this substance of this "confidential" complaint was disclosed to Plaintiff's co-workers.

34. After filing his complaint with human resources, sometime in or about mid-December, Plaintiff's co-workers suddenly stop speaking with the Plaintiff.

35. Plaintiff's differential treatment included, but is not limited to the following adverse employment actions:

   (a) Supervisor Schlemmer used "Use of Time" against Plaintiff stating that Plaintiff was taking excessive lunch breaks;

   (b) Plaintiff was denied training opportunities;

   (c) For at least 6-months after staring employment, Plaintiff was denied administrative rights in order to gain access to computers, when other non-disabled employees (e.g. Michael Lewis) were granted these administrative rights on day one of their employment.

   (d) Assigning Plaintiff jobs that Defendant knew he would be unable to perform for the purpose of setting up Plaintiff for termination for poor job performance;

    (e)    Excessively monitoring Plaintiff's actions and work performance and engaging in a generally hostile manner towards him; and

    (f)    Disclosure of his confidential complaint made to co-workers;

    (g)    Refusing to engage in an interactive discussion regarding Plaintiff's requested accommodations;

    (h)    Refusing Plaintiff reasonable accommodations for his disability

36. Throughout the Spring of 2016, Plaintiff requested on numerous occasions to be assigned less telecommunications and more computer support work, that would have accommodated his disability, but was refused each time.

37. After making requests for a reasonable accommodation, and complaints to Human Resources about supervisor Schlemmer, on or about April 24, 2016, Plaintiff was placed on a second 90-day Probationary Period running until June 1, 2016.

38. On or about April 11, 2016, Plaintiff was informed by supervisor Schlemmer that he would have to undergo a "Skills Assessment Demonstration".

39. On or about April 22, 2016, Plaintiff was terminated from his position for poor job performance.

40. Plaintiff could have easily performed his job to the expectations of his employer with a reasonable accommodation. Instead, Defendant-Employer refused to provide Plaintiff with a reasonable accommodation for his condition.

41. Defendant-Employer's reason for terminating Plaintiff was a pretext, so as to cover Defendant-Employer's illegal motivation.

42. Defendant-Employer's refusal to accommodate Plaintiff's disability, its refusal to meaningfully explore reasonable accommodations for his disability, and Defendant-Employer's

discharge of Bravo constitutes gross, wanton, reckless, and/or intentional violations of his rights under the ADA, entitling him to punitive damages.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ADA

43. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

44. The ADA requires employers with 15 or more employees to provide qualified individuals with disabilities an equal opportunity to benefit from the full range of employment-related opportunities available to others.

45. At all times relevant, Plaintiff was disabled as defined by the ADA, due to his permanent physical impairment that significantly restricted his major life activities.

46. At all relevant times, Plaintiff could perform his essential job functions with reasonable accommodations from his employer.

47. Defendant-Employer's refusal to consider, or make reasonable accommodations for Plaintiff, an otherwise qualified employee, solely on the basis of Defendant-Employer's refusal to provide or allow reasonable accommodations to Plaintiff's disability such that he could continue to fulfill the essential functions of his job as an End User Site Support Level III Technician, and its discharge of Plaintiff because of his disability, constitutes discrimination in violation of the ADA.

48. Instead of accommodating Plaintiff's conditions, Defendant-Employer subjected the Plaintiff to differential treatment and adverse actions as outlined above in the course of his employment in violation of the ADA.

49. Plaintiff was terminated because of his disability.

50. Non-disabled employees were not subjected to the same treatment or termination.

51. Defendant-Employer retained similarly situated non-disabled employees who had no higher skill level or experience than Plaintiff, and who were lesser qualified than Plaintiff.

52. Defendant-Employer's wrongful acts, individually and/or by and through its agents, were intentional, willful and wanton, malicious, oppressive, and in total disregard and reckless indifference to Plaintiff's rights under the ADA, and justify the awarding of exemplary, liquidated and/or punitive damages.

53. As a direct and proximate result of the acts engaged in by Defendant-Employer, Plaintiff suffered severe damages, including but not limited to loss of pay, past and future, loss of career opportunities, loss of future earnings, lost benefits past and future, and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; damage to reputation, attorney's fees, costs, and other damages allowed under the ADA.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant-Employer in an amount that will fully compensate him for his injuries and damages for Defendant's violation of Plaintiff's rights under the ADA and award Plaintiff reinstatement, damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, expense of litigation, expert witness fees, reasonable attorney's fees, punitive damages, and prejudgment interest, as well as any other further relief the Court deems just and appropriate.

## COUNT II

## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

54. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

55. Plaintiff has a protected right as a qualified individual with a disability for an equal opportunity to benefit from the full range of employment-related opportunities available to others.

56. The ADA requires employers to engage in an interactive process with individuals with disabilities to evaluate how their condition may be accommodated.

57. The ADA also requires employers to make reasonable accommodations to the known physical limitations of individuals with disabilities, unless it results in undue hardship.

58. Defendant-Employer would not have suffered any undue hardship in providing reasonable accommodation to Plaintiff for his disability.

59. Plaintiff attempted to exercise his rights under the ADA through requests for reasonable accommodations.

60. Defendant-Employer failed to engage in an interactive process with Plaintiff to determine how it could accommodate Plaintiff's condition, and refused to grant Plaintiff reasonable accommodations for his disability on more than one occasion, in violation of the ADA, and instead terminated his employment without justifiable cause.

61. The above-mentioned acts of Defendant, individually and through its agents, were willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages.

62. As a direct and proximate result of the acts engaged in by Defendant-Employer, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past and future, loss of career opportunities, loss of future earnings, lost benefits, past and future, and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment;

physical harm, exacerbation of his medical condition; damage to reputation, attorney's fees, costs, and other damages allowed under the ADA.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant-Employer in an amount that will fully compensate him for his injuries and damages for Defendant's violation of Plaintiff's rights under the ADA and award Plaintiff reinstatement, damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, expense of litigation, expert witness fees, reasonable attorney's fees, punitive damages, and prejudgment interest, as well as any other further relief the Court deems just and appropriate.

## COUNT III

## RETALIATION

63. Plaintiff realleges and incorporate as if fully stated herein each and every allegation contained above and incorporates the same herein by this reference as though set forth in full.

64. All the various actions taken by Defendant-Employer against Plaintiff subsequent to when he complained of discrimination in December 2015 and again in January 2016 constitute unlawful retaliation in violation of the ADA.

65. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant-Employer in an amount that will fully compensate him for his injuries and damages for Defendant-Employer's violation of Plaintiff's rights under the ADA and award Plaintiff reinstatement, damages for loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits,

past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, expense of litigation, expert witness fees, reasonable attorney's fees, punitive damages, and prejudgment interest, as well as any other further relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in his complaint.

Respectfully submitted,

PANICO LAW LLC

*ss/John Robert Panico*
John Robert Panico, Attorney No. 24039-48
9465 Counselors Row, Suite 200
Indianapolis, IN 46240
(317) 759-7464 (t)
(317) 805-2743 (f)
*jpanico@discriminationlawgroup.com*

Counsel for Plaintiff